741 P.2d 352

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Robert L. BURNSIDE,
Defendant-Appellant.**

**No. 16142.**

Court of Appeals of Idaho.

July 15, 1987.

Marvin R. Stucki, Idaho Falls, for defendant-appellant.

Jim Jones, Atty. Gen., John J. McMahon, Deputy Atty. Gen. (argued), for plaintiff-respondent.

SWANSTROM, Judge.

Officers executing a search warrant found cocaine and methamphetamine at the residence of Robert Burnside. He was

charged with two counts of possession of a controlled substance with the intent to deliver. I.C. § 37–2732. Burnside's motion to suppress the evidence seized from his home was denied, and he entered a plea of guilty conditioned on his right to appeal questions of law. I.C.R. 11(a)(2). The district court sentenced him to seven years in the custody of the State Board of Correction.

On appeal, Burnside contends that (1) the search warrant was issued without probable cause; (2) execution of the warrant occurred at night in violation of its terms, rendering the search illegal; (3) the search of a safe in Burnside's home went beyond the scope of the search warrant, requiring exclusion of the evidence found therein; (4) the court erred in allowing the state to present testimony during the hearing on Burnside's suppression motion while neither Burnside nor his attorney was present; and (5) the court imposed an ambiguous, unduly harsh sentence. For reasons given below, we affirm in part but remand for correction of the judgment and for resentencing.

Pursuant to an anonymous tip, Officer Todd Ericsson of the Idaho Falls Police Department began an investigation of Robert Burnside. After approximately nine days of surveillance and two searches of Burnside's trash, Ericsson applied for, and received, a warrant to search, during the daytime, Burnside's residence, his vehicle, and "any person found on the premises." The search was limited to "cocaine, evidence of ownership or possession, any narcotics including Cocaine, Marijuana, Methamphetamine, drug paraphernalia and evidence of drug use and trafficking [sic]."

At approximately 8:00 p.m. on September 15, 1984, Burnside returned home from a trip to Nevada and was confronted by the officers with the warrant. The officers searched Burnside and arrested him following discovery of cocaine, methamphetamine and more than $6,000 on his person. A brief search of the premises ensued, during which the officers persuaded Burnside to open a safe found inside the house. The safe contained more than $6,000 in cash, cocaine, methamphetamine and miscellaneous other items.

Burnside was subsequently charged with two counts of possession of a controlled substance with the intent to deliver. He moved for suppression and return of the evidence seized by the officers. A hearing was held. Neither Burnside nor his counsel was present at the hearing, yet the district judge received testimony from the state concerning the time of day the search warrant was executed. He then denied the motion. At Burnside's request, the court granted a rehearing at which both parties were in attendance. The court ultimately reaffirmed its denial of the motion to suppress. Burnside entered a conditional plea of guilty and brought this appeal.

Burnside's arguments fall into three categories: (1) the validity and scope of the search warrant; (2) the hearing on the suppression motion; and (3) the imposition of the sentence. Each subject will be discussed in turn.

## I

Burnside offers three arguments concerning the validity and scope of the search warrant: (a) whether there was probable cause for issuance of the search warrant; (b) if so, whether the search warrant was executed during the nighttime in violation of its terms; and (c) if not, whether seizure of the items from inside the safe went beyond the scope of the warrant, requiring suppression of the evidence.

## A

A review of a magistrate's finding of probable cause involves a determination of whether the magistrate had a substantial basis for concluding that probable cause existed. *State v. Forshaw,* 112 Idaho 162, 730 P.2d 1082 (Ct.App.1986). When the probable cause determination is based in whole or in part on information from an anonymous informant, we must apply the "totality of the circumstances" analysis established in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *State v. Forshaw, supra.* This analysis replaced the more rigid two-prong test of

*Aguilar-Spinelli* originated in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The latter test strictly required establishment of the informant's "basis of knowledge" along with either his veracity or the reliability of his information. In contrast, the *Gates* inquiry, as we interpret it in Idaho, begins by examining these two prongs but, when one prong proves weak, allows the magistrate to consider the totality of the circumstances to determine the existence of facts relevant to establishing probable cause. *State v. Forshaw, supra.*

When he applied for the search warrant, Officer Ericsson presented the following evidence of probable cause: (1) information conveyed from an anonymous informant to Officer Dennis Nizzi identifying Burnside, his address and his employer and asserting that Burnside sold methamphetamine; (2) information gleaned from an initial search of the trash in an alley behind Burnside's residence, revealing papers, bank receipts and statements bearing Burnside's name, a paper "bindle" folded in a manner common for the transport of narcotics, and notepads listing names, quantities and amounts in formats and figures consistent with drug use, common street values and common trafficking quantities; (3) observation of an extended period of activity consistent with narcotic dealings and characterized by Burnside's late-night rendezvous with numerous unidentified persons for short periods of time in quick succession, both at his residence and in public areas; (4) Ericsson's statement that late one evening outside Burnside's home he saw a visitor startle Burnside and heard Burnside say, "Oh, that's okay I just get real paranoid when I'm dealing;" (5) observations of Burnside as he made frequent checks of his premises throughout the night; and (6) a second search of the trash, revealing two additional bindles and a wrapper from a package of Zig-Zag cigarette papers.

■ Burnside argues that this information provided no basis for the belief that narcotics were located on his property or

that he was engaged in anything but legal activities. Specifically, Burnside argues that the anonymous tip was unsubstantiated and unreliable. Very little information was received from the informant. Nothing in the tip indicated the informant's basis of knowledge. Partial verification occurred through Officer Ericsson's check of the utility records for the address given and through receipt of similar information from other informants. However, the basis of knowledge and veracity inquiries are extremely weak and hence must be given little weight. Keeping in mind that probable cause is based on a standard of probability, not proof, *State v. Forshaw, supra,* we turn to the remaining circumstances to determine the existence of probable cause.

The informant's tip prompted an investigation into Burnside's activities. The officers' observations and conclusions, based heavily on past narcotics experience, corroborated the informant's disclosure. The notepads, bindles and other evidence retrieved from the garbage, while not conclusive individually, together indicate activity likely connected with narcotics. When viewed in the aggregate, these points are more indicative of criminal activity than of innocent activity.

Burnside asserts that none of the evidence provided a substantial basis to believe that narcotics were located on his premises. However, much of the suspicious activity observed during the officers' surveillance occurred either at Burnside's residence or in his car. Additionally, the discovery of similar questionable items in the garbage on separate occasions strongly suggests the possibility of additional articles existing on the premises. Based on the information and circumstances outlined in the affidavit, we hold that a substantial basis existed for the magistrate's finding of probable cause.

B

Faced with a validly issued warrant, Burnside asserts that its execution was fatally flawed. The warrant clearly provides for execution during daylight hours. The parties agree that sunset "officially" oc-

curred at approximately 7:39 p.m. The court found that the search commenced during daylight hours at approximately 8:00 p.m. Burnside argues that this determination is erroneous.

■ I.C.R. 41(c) authorizes daytime execution of a search warrant unless, for reasonable cause shown, the issuing authority provides in the warrant for nighttime execution. However, neither the rule nor the cases interpreting it defines "daytime," unlike a number of other jurisdictions. *E.g.,* Fed.R.Crim.P. 41(h) (daytime extends between 6:00 a.m. and 10:00 p.m. local time); *United States v. Liebrich,* 55 F.2d 341 (D.C.Pa.1932) (holding, before adoption of 41(h), that daytime extends from at least thirty minutes before sunrise to thirty minutes after sunset); *Funches v. State,* 53 Ala.App. 330, 299 So.2d 771 (1974) (daytime exists while the light from the sun allows recognition of a person's features); *United States v. Ortiz,* 311 F.Supp. 880 (D.C.Colo. 1970) (a daytime search is proper where there is sufficient light to recognize a person's features and to read the search warrant). The natural light of day may extend visibility beyond a locality's official sunset.[1] Where one's features are clearly discernible by natural light alone, even after official sunset, we cannot say that daytime has ceased. Accordingly, we hold that, for execution of search warrants, daytime extends from dawn to darkness where darkness is the point at which insufficient natural light exists with which to distinguish another's features. *Accord, State v. Cain,* 31 S.W.2d 559 (Mo.1930).

■ The issue here is composed of two questions: (1) whether the search did, in fact, occur at 8:00 p.m., and (2) whether 8:00 p.m. was nighttime under these circumstances. Both are factual questions, calling not for the assignment of a legal effect to a set of facts but rather for a determination of the existence of facts to which legal effect will ultimately be given. Applying the appropriate clear error standard of review, we will not disturb the district court's finding if the decision below is supported by substantial and competent, albeit conflicting, evidence. *State v. Curtis,* 106 Idaho 483, 680 P.2d 1383 (Ct.App. 1984); *State v. Moulds,* 105 Idaho 880, 673 P.2d 1074 (Ct.App.1983).

Both sides offered evidence below in support of their position concerning the time the search commenced and the corresponding degrees of visibility. There is no question that the officers arrived at Burnside's home with the search warrant, prepared to make the search during daylight hours. However, Burnside was not at home and the officers waited some time for him to return. The search was thus delayed until Burnside arrived.

In his memorandum decision, the district judge held that the credible evidence indicated that the search occurred during the daylight. He determined there was sufficient natural daylight with which to clearly identify individuals without the aid of artificial light when the search was actually commenced. His findings were based on substantial, though disputed, evidence. His conclusion that the search occurred during the daytime was legally correct. Hence, we will uphold it.

### C

■ Finally, during the search of Burnside's residence, the officers demanded that Burnside open a safe in which was found incriminating evidence. Burnside challenges this action, focusing primarily on the lack of probable cause for the search warrant. He argues that without probable cause, the officers had no justification for searching a safe they did not know existed before execution of the warrant. He also contends that the safe was not a "plausible repository" for narcotics absent the existence of independent probable cause to believe the safe housed controlled substances.

We cannot agree with Burnside's position. Burnside had the same expectation of privacy in his safe as in his residence. We have concluded that probable cause ex-

---

1. Our Legislature has recognized this fact, for example, in the laws governing the operation of motor vehicles by defining "daytime" for such purposes as that "period of time one-half (½) hour before sunrise to one-half (½) hour after sunset." I.C. § 49–511.

isted for issuance of the warrant to search Burnside's residence. Knowledge of the safe's existence is irrelevant to the propriety of the search. When conducting a search pursuant to a warrant, an officer may reasonably search places within the premises which are "plausible repositories" for the items described in the warrant. *State v. O'Campo*, 103 Idaho 62, 644 P.2d 985 (Ct.App.1982). *See also State v. Capps*, 97 N.M. 453, 641 P.2d 484 (1982); *People v. Press*, 633 P.2d 489 (Colo.App. 1981); *Awaya v. State*, 5 Hawaii App. 547, 705 P.2d 54 (1985); *State v. Worth*, 37 Wash.App. 889, 683 P.2d 622 (1984). Here, the search warrant sought cocaine and methamphetamine. Because probable cause existed to find such contraband within the residence, then it was evident that a safe within the residence was a "plausible repository." The officers therefore permissibly searched the safe for material listed on the search warrant. *Cf. State v. Caldero*, 109 Idaho 80, 705 P.2d 85 (Ct.App.1985) (holding that a locked file cabinet in a residence could not be seized and removed, but that it could be searched on the site as a plausible repository for items listed in a search warrant).

## II

■ We next turn to the suppression hearing. The hearing was originally scheduled for November 20, 1984. Due to numerous conflicts, the hearing was rescheduled five times. On January 3, 1985, the final scheduled date, neither Burnside nor his counsel was in attendance due to counsel's illness. Despite Burnside's contrary assertion, the record indicates that neither the court nor the state received notice of the illness. The court proceeded with the hearing, heard testimony from a witness for the state concerning the time of the search, and denied Burnside's motion. Burnside contends that the court's acceptance of the state's testimony during his absence was an abuse of discretion, denying him his due process rights and generating judicial bias in the state's favor.

We disagree. Burnside has not established the existence of error or prejudice against him resulting from the court's ac-

tions. He can only point to the one-sided testimony received at the hearing as illustrative of prejudice, without showing any subsequent manifestation of prejudice or influence in the ultimate outcome of the case. In any event, any possible error was cured by the court's grant of an immediate rehearing at which Burnside had ample opportunity to present evidence and to cross-examine witnesses, including the witness from the January 3 hearing. The record illustrates the court's efforts to fairly accommodate both parties in scheduling the initial hearing and in permitting the rehearing. We hold that no unfair prejudice has been shown. Consequently, Burnside's assertion on this point must fail.

## III

Burnside's final issue involves a review of the sentence pronounced below. Burnside entered a conditional plea of guilty to each of the two counts. The judgment of conviction did not distinguish between counts. It simply referred to "the offense as charged" and adjudged Burnside to be "guilty of the crime as charged in the Information...." The district judge sentenced him to a single seven-year term. Burnside argues first that the sentence is ambiguous in its failure to specify whether the sentence for each count is seven years and runs concurrently with the other or whether the sentences are made up of some combination, running concurrently or consecutively, totalling seven years.

As noted above, Burnside was charged with two counts of possession of a controlled substance with intent to deliver. I.C. § 37–2732. For each count, he could have been imprisoned for no more than life, fined no more than $25,000, or both. I.C. § 37–2732(a)(1)(A). The court's oral pronouncement of sentence, as well as the judgment of conviction, imposed upon Burnside "a term not to exceed 7 years." Although no further clarification appears in the record, the language employed affixes a ceiling to the sentence, indicating an indeterminate sentence which allows the possibility of parole. I.C. § 19–2513.

■ Not so clear, however, is the application of this single term to the two counts

to which Burnside pled guilty. Where more than one sentence is to be imposed, the judgment of conviction must clearly identify the sentences and their relation to each other. *State v. Storey*, 109 Idaho 993, 712 P.2d 694 (Ct.App.1985). This aids in avoiding the possibility of injustice and confusion should an appeal be taken. The judgment here is deficient in this regard.

Where the judgment of conviction is not, in itself, clear and unambiguous, the reviewing court may look to the remainder of the record to ascertain the sentencing judge's intent. *See State v. Storey, supra.* In contrast, when an orally pronounced sentence is ambiguous concerning a material aspect, the case must be remanded for resentencing. *State v. Hoffman*, 108 Idaho 720, 701 P.2d 668 (Ct.App.1985). Here, the oral pronouncement is no less ambiguous than the written judgment. Consequently, we must remand the case for resentencing. *State v. Phillips*, 99 Idaho 354, 581 P.2d 1173 (1978).

Finally, Burnside urges that an indeterminate sentence of seven years for the crimes in this case is unduly harsh and represents an abuse of discretion. In the interest of judicial economy we could address the issue in this appeal. However, to do so we would have to make certain assumptions about the judge's intentions which might not be accurate. Moreover, our discussion would not include any new or additional circumstances occurring since the first sentencing which Burnside might ask the court to consider before he is resentenced. Accordingly, we decline to address the issue, acknowledging only that it can be raised again after resentencing.

The district court's order denying Burnside's motion to suppress the evidence is affirmed. The case is remanded for correction of the judgment of conviction and for resentencing.

WALTERS, C.J., and BURNETT, J., concur.