794 P.2d 278

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Mark A. LEDBETTER,
Defendant–Appellant.**

**No. 17330.**

Court of Appeals of Idaho.

Jan. 3, 1990.

Petition for Review Denied
May 24, 1990.

James A. Raeon of Coeur d'Alene for defendant-appellant.

Jim Jones, Atty. Gen. by Michael J. Kane, Deputy Atty. Gen., for plaintiff-respondent.

SWANSTROM, Judge.

Mark Ledbetter entered conditional guilty pleas to growing marijuana and to possession of marijuana with intent to deliver, reserving the right to appeal a district court's order denying his motion to suppress evidence seized with a search warrant and his motion to vacate one of the charges. He contends (1) the magistrate lacked probable cause to issue the search warrant; (2) the officer seeking the warrant recklessly or knowingly gave the magistrate false and misleading information to obtain the warrant; (3) the officer's lack of good faith requires suppression of the evidence obtained; and (4) in violation of constitutional and statutory provisions he is being convicted and punished twice for the same acts. For the reasons that follow, we affirm the suppression order but we remand the case with directions for dismissal of one of the counts.

In September 1986, an anonymous male informer (hereinafter AI–1) called the state marijuana hotline in Boise to report Ledbetter's marijuana-related activities. AI–1 described Ledbetter's home and said that artificial lighting was being used to cultivate marijuana plants inside. However, AI–1 did not have firsthand knowledge of this and a search warrant was denied based on the lack of probable cause. In January 1987, an anonymous female informer (hereinafter AI–2) called the same state marijuana hotline to report Ledbetter's activities. AI–2 reported that Ledbetter was growing between forty and fifty marijuana plants by using artificial lighting and that Ledbetter was making approximately $40,000 per year while employing three people to sell the marijuana. AI–2 indicated that one of the sellers, Greg Ziegler, was related to AI–2's husband. AI–2 did not have firsthand knowledge of the marijuana in Ledbetter's home but stated that her husband was Ledbetter's friend and had seen the marijuana plants. AI–2 also stated that Ledbetter's marijuana activities had continued for one to one and one-half years and she had personally heard Ledbetter talk about fertilizing his plants even though, to

AI–2's knowledge, Ledbetter did not maintain any outdoor garden or indoor decorative plants. She reported hearing Ledbetter use words like "it" and "stuff," and once her husband brought some marijuana home to show her what it looked like. She also said that Ledbetter had complained about his "very high" electric bills. Finally, AI–2 noted that Ledbetter was employed by "Norm's Plumbing" in Kootenai County.

Officer Dean Roland was the senior criminal investigator for the Idaho Department of Law Enforcement, Bureau of Narcotics, assigned to investigate the informants' allegations. By way of corroboration, Officer Roland established that Ledbetter's home was owned by a party named Ziegler and that its electrical usage was much higher than that of comparable homes in the same area. Officer Roland also determined that Ledbetter occupied the home.

After AI–2's report, Officer Roland submitted an affidavit to the magistrate requesting a search warrant be issued for Ledbetter's premises. The search warrant was obtained once the magistrate concluded that sufficient probable cause existed. The subsequent search of Ledbetter's home revealed marijuana plants and related cultivation equipment. Ledbetter's motion to suppress the evidence seized from his home was denied. Ledbetter entered conditional guilty pleas to one count of manufacturing a controlled substance and one count of possession of a controlled substance with intent to deliver. I.C. § 37–2732 (Supp. 1986); I.C.R. 11(a)(2).

I

We will first assess whether probable cause was established for the issuance of a search warrant. For a search warrant to be valid, it must be supported by probable cause. U.S. Constitution, Amend. IV; Idaho Constitution, Article 1, § 17. To review a magistrate's determination that probable cause exists, the magistrate must have established a substantial basis upon which to base such finding. *State v. Burnside*, 113 Idaho 65, 741 P.2d 352 (Ct.App. 1987). When the probable cause determination is based wholly or partially on information received from an anonymous informant we may consider the "totality of the circumstances" in determining whether such a substantial basis existed. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *See State v. Lang*, 105 Idaho 683, 672 P.2d 561 (1983); *State v. Forshaw*, 112 Idaho 162, 730 P.2d 1082 (Ct.App.1986).

Before *Gates* was decided, the *Aguilar–Spinelli* two-pronged test required the officer requesting the warrant to establish the anonymous informant's veracity and the basis of his knowledge before a valid warrant could be issued. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Even though the *Aguilar–Spinelli* test has been supplanted, it is still useful in determining whether the magistrate was provided enough information upon which to base probable cause and issue the search warrant. *State v. Schaffer*, 107 Idaho 812, 693 P.2d 458 (Ct.App.1984).

Veracity is best demonstrated by showing the informant's past reliability or present credibility. *State v. Vargovich*, 113 Idaho 354, 743 P.2d 1007 (Ct.App.1987) (review denied). Nothing in the record shows that AI–1 or AI–2 previously had been an informant. AI–1 admitted he was reporting Ledbetter's activities strictly for monetary reasons. AI–2 stated that she called the marijuana hotline because Ledbetter's activities were causing family problems between AI–2 and her husband. However, as to their present reliability, Officer Roland was able to corroborate some facts given by each of the informants. The basis of knowledge prong may be established by the informant's firsthand observation. *Id.* Here, there was no such reported observation, although AI–2 said she had heard comments strongly supportive of marijuana-related activities. Because neither the veracity nor knowledge of Ledbetter's illegal practices was conclusively established, we now look more broadly at the totality of the circumstances to determine whether probable cause existed. In doing

so, we are mindful that in questionable cases, "the reviewing court should give preference to the validity of the warrant." *United States v. Calabrese,* 825 F.2d 1342, 1349 (9th Cir.1987); *see also United States v. Peacock,* 761 F.2d 1313 (9th Cir.1985), *cert. denied* 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 114 (1985).

■ In addition to the information supplied by the two anonymous informants, the officers gathered electrical usage data that showed Ledbetter was using larger amounts of electricity than were other comparable homes in the area. Based on Officer Roland's knowledge and experience, he told the magistrate that consuming unusual amounts of electricity suggests use of intense artificial lighting for growing marijuana. Electrical usage data may be used to establish probable cause. *State v. Christen,* 79 Or.App. 774, 720 P.2d 1303 (*en banc* 1986); *State v. Sterling,* 43 Wash. App. 846, 719 P.2d 1357 (1986) (electrical usage is an element to be considered in determining whether probable cause exists). Officer Roland also confirmed that Ledbetter's residence was owned by a person named Ziegler living in or near Kennewick, Washington. He also testified that another officer had confirmed "as of last September" that Ledbetter was employed by Norm's Plumbing.

Based upon the totality of the circumstances, we find that between the information gleaned from the two anonymous informants, Officer Roland's corroboration of much of their statements, and the electrical usage data, the magistrate had a substantial basis upon which to determine the existence of probable cause to issue a search warrant.

## II

Ledbetter next asserts that when applying for the search warrant, Officer Roland made false statements with reckless disregard of their truth. Where the defendant makes a "substantial preliminary showing" that the officer has knowingly, intentionally, or with reckless disregard for the truth, included false statements in the warrant affidavit, "the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks v. Delaware,* 438 U.S. 154, 156, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978). If the defendant then establishes perjury or reckless disregard by a preponderance of the evidence, and "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.*

■ At the suppression hearing the district court considered the misstatements and concluded they were not made with reckless disregard for the truth. We address each in turn. First, Ledbetter asserts that AI–1 erroneously reported that Ledbetter's house was on the "southeast" corner of the intersection, while Officer Roland's testimony to the magistrate implied that AI–1 had correctly reported its location as on the "southwest" corner. In fact, the notes of the hotline operator show that AI–1 did say "southwest" while the teletype relaying this information from Boise to Officer Roland incorrectly stated "southeast." However, the record of the suppression hearing shows that when Officer Roland applied for the search warrant in January 1987, he had copies of two office documents both showing the first informant had said "southwest corner." Ledbetter also argues that Officer Roland sought to mislead the magistrate by implying AI–1 had mentioned the specific street address of Ledbetter's house when in fact he had not. It is true that Officer Roland, rather than either informant, provided the specific street address, but it is also clear that the information provided by AI–1 was accurate and sufficient to identify Ledbetter's house. By these facts, the district court was not persuaded that Officer Roland proceeded recklessly or with an intent to mislead the magistrate. We reach the same conclusion.

Second, AI–1 stated that Ledbetter was growing marijuana in the attic portion of his home. Officer Roland did not tell the magistrate that his investigation revealed

**12**

the house did not have an "attic." To the contrary, Officer Roland told the magistrate the assessor's records showed "no basement and no attic" but that Ledbetter's house had "a high peaked roof where a small attic space or crawl space is available." The difference between an attic and an "attic space" under a roof is not significant to a determination of probable cause. The transcript of the probable cause hearing shows that Officer Roland's statements were not misleading and the magistrate, in fact, was not misled.

■ AI–1 also stated the "house" had no windows. The district court found it clear that AI–1 meant there were no windows in the attic area, not that the house was entirely windowless. Again, we cannot conclude that Officer Roland's testimony about this detail was intended to, or did, mislead the magistrate. It is simply not reasonable to suggest that Officer Roland wanted the magistrate to believe the house had no windows anywhere.

■ Finally, Officer Roland incorrectly stated that Ledbetter's house was heated by natural gas and that Ledbetter was currently employed by Norm's Plumbing. Ledbetter argues that these misrepresentations were crucial in determining whether Ledbetter's electrical usage was excessive. In fact, although Ledbetter's house was connected to a gas system, it was heated by electricity and Ledbetter had been laid off at Norm's Plumbing at the time when the warrant was issued.

■ Negligent or innocent misrepresentations, even if necessary to establish probable cause, will not invalidate a warrant. *State v. Lindner*, 100 Idaho 37, 592 P.2d 852 (1979). The district court found that neither misstatement about the gas heat or Ledbetter's employment at Norm's Plumbing were made intentionally or in reckless disregard of the truth. At the suppression hearing, Officer Roland repeatedly testified that he in no way attempted to defraud,

hide or conceal any facts from the magistrate. The district court further stated that "even if these representations were so made, one must not lose sight of their purpose. The fact still exists, that even if Ledbetter was home all day long and he exclusively used electricity to heat his home, his consumption of that power source would still be excessive." The electrical usage figures provided to the magistrate indicated that Ledbetter used far more power than comparable homes in the same area. We agree with the district court that Ledbetter failed to meet his burden with regard to showing that any of the misrepresentations was intentional or made with reckless disregard for the truth.

### III

Ledbetter's last argument for suppression is also based on the assumption that Officer Roland did not act in good faith in obtaining the search warrant. The district court found otherwise and we uphold that finding. Because we also agree that the magistrate had probable cause to issue the search warrant, there is no further need to discuss Ledbetter's arguments concerning the application of *United States v. Leon*, 468 U.S. 897, 104 S'.Ct. 3405, 82 L.Ed.2d 677 (1984) to the facts of this case. We conclude the search warrant was valid and the motion to suppress was properly denied.

### IV

Ledbetter next argues that separate convictions for manufacture of a controlled substance and for possession with intent to deliver violate his constitutional and statutory protection against double jeopardy. In order to preserve this issue for appeal Ledbetter filed a motion to vacate his "conviction" on either count.[1] The district court denied the motion. Ledbetter contends that both offenses relate to the same course of conduct and, therefore, multiple

---

1. Actually, the district court entered orders withholding a judgment of conviction on each count. The orders, identical in terms, granted probation for three years during which Ledbetter would be required to serve some time in jail followed by a closely supervised probationary period. He would also be required to pay certain costs to the county and perform community service.

convictions cannot stand. We agree the two offenses are closely related.

■ We will begin by addressing Ledbetter's contention that constitutional protections prohibit multiple convictions and punishment in this case. We have closely examined this issue in *State v. Randles*, 115 Idaho 611, 768 P.2d 1344 (Ct.App.1989) (review pending), a nearly identical case. The issue arises here from I.C. § 37–2732 (Supp.1986) which proscribes four possible crimes: (1) manufacturing a controlled substance, (2) delivery of a controlled substance, (3) possession of a controlled substance with intent to manufacture and (4) possession of a controlled substance with intent to deliver. In *Randles* we noted: "This is a constitutionally permissible legislative choice. As the United States Supreme Court once said, referring to federal liquor laws during the prohibition era, '[t]here is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has the power to prohibit....'" *Id.* at 615, 768 P.2d at 1348, *quoting Albrect v. United States*, 273 U.S. 1, 11, 47 S.Ct. 250, 253, 71 L.Ed. 505 (1927).

■ The only constitutional protection against prosecution for closely related crimes exists in the double jeopardy provisions of the state and federal constitutions. *See* Idaho Const. Art. I, § 13; United States Constitution, Amendment V. "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). This mandates an examination of the statutory elements of the offense. Therefore, double jeopardy is not present where each offense requires proof of a fact the other offense does not. *Matthews v. State*, 113 Idaho 83, 741 P.2d 370 (Ct.App.1987); *State v. Werneth*, 101 Idaho 241, 611 P.2d 1026 (1980).

The facts establishing the statutory elements of manufacturing a controlled substance are different from the facts required to prove the elements of possessing a controlled substance with intent to deliver. Manufacturing is completed when a person produces or otherwise prepares the controlled substance. I.C. § 37–2701(m) (Supp.1986). On the other hand, possession with intent to deliver does not require any production, processing or synthesizing of a drug. The crime is complete upon actual or constructive possession coupled with the intent to transfer, or attempt to transfer, the substance to another person. I.C. § 37–2701(f) (Supp.1986). Each crime requires proof of an element not required by the other. Accordingly, we hold the separate convictions in this case do not violate the state and federal constitutional protection against double jeopardy.

■ We will now address Ledbetter's second argument: that convictions and punishment for both counts of "manufacturing" and "possession of a controlled substance with intent to deliver" are prohibited by I.C. § 18–301 in this case. The statute provides:

An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other.

Unlike the constitutional prohibition against double jeopardy, I.C. § 18–301 focuses on acts, not upon elements of offenses. Consequently, the intent element of "possession with intent to deliver"—while important in distinguishing that crime from "manufacturing"—provides no basis to distinguish the crimes under I.C. § 18–301.

In *State v. Randles, supra*, we also discussed an I.C. § 18–301 issue. We concluded that dual convictions were permissible under the evidence presented to the jury and particularly under a jury instruction limiting the scope of the crime of "manu-

facturing" in that case. We made it clear that our decision was limited to the peculiar circumstances of the case. 115 Idaho at 616 n. 3, 768 P.2d at 1349 n. 3.

However, here there was no trial. Consequently, there is no limiting jury instruction; neither do we have the benefit of a full disclosure of the state's evidence showing exactly what "acts" of the defendant were involved in the commission of each crime. Moreover, the informations separately charging the two crimes of manufacturing and possession with intent to deliver contain no specific factual allegations showing what "acts" are alleged to be the basis for each respective crime.

Ledbetter was charged with the crime of "possession of a controlled substance with the intent to deliver" as follows:

> That the defendant, MARK LEDBETTER, on or about 26th day of January, 1987, in the County of Kootenai, State of Idaho, did possess a controlled substance, to-wit: Marijuana with the intent to deliver the aforementioned controlled substance....

The information charging him with "manufacturing a controlled substance" stated:

> That the defendant, MARK LEDBETTER, on or about the 26th day of January, 1987, in the County of Kootenai, State of Idaho, did manufacture a controlled substance, to-wit: Marijuana....

It will be noted that both crimes were alleged to have occurred on the same day. In these general allegations there is nothing, other than the names of the crimes, to distinguish between the acts underlying the two charges. Thus, we have no clear picture of what facts were established by Ledbetter's conditional guilty pleas, other than at the same time and the same place, he "did manufacture ... Marijuana" and "did possess ... Marijuana with the intent to deliver."

We have also examined the transcripts of the preliminary hearing and suppression hearing to determine what evidence the state presented to establish the commission of each crime. The question is not whether the evidence is sufficient to support either count; it is. The question is whether the evidence discloses that each crime is based on separate *acts* by the defendant. Such evidence of separate acts is lacking. The district judge, in denying Ledbetter's motion to vacate his conviction on one of the charges, noted that there was evidence of "packaging" of the marijuana. He concluded that this was an act associated with the crime of possession with intent to deliver distinct from the crime of manufacturing.

We respectfully disagree. The officers found a set of scales in the bedroom of Ledbetter's home. The scales, together with the large quantities of marijuana being grown and processed were certainly indicative of the "intent to deliver." Materials which could be used for "packaging" were found in the kitchen but the officers did not seize the materials because they were not associated with the seized contraband. In any event, this evidence did not show any "acts" by Ledbetter in packaging marijuana. Moreover, even if there were some evidence of packaging the marijuana by Ledbetter, this is not necessarily an act distinct from "manufacturing." As statutorily defined, "manufacturing" may include not only the propagation and production of marijuana but also any "preparation" and "any packaging or repackaging of the substance...." I.C. § 37–2701(m) [presently codified as I.C. § 37–2701(r)]. Thus, there is an overlap of the acts which may support a charge of manufacturing and the act of possessing such marijuana with intent to deliver.

This overlap could be avoided in a particular case if the two crimes were charged with specific reference to separate acts committed at different times, thus satisfying the "temporal" test under I.C. § 18–301. *See State v. Sterley,* 112 Idaho 1097, 739 P.2d 396 (1987). However, as noted, the prosecutor's informations filed in this case make no such distinction at all. Upon this record, we find no basis to distinguish the acts underlying the two charged crimes.

We conclude that the district court erred in refusing to dismiss one of the counts. Accordingly, we remand the case to the

district court to determine which conviction to set aside and, therefore, which withheld judgment should be vacated. Because the evidence is sufficient to support either count, we will leave this decision to the discretion of the district court.

BURNETT, J., and BENGTSON, J. Pro Tem., concur.