The STATE of Ohio, Appellee,

v.

GANTZ, Appellant.*

[Cite as *State v. Gantz* (1995), 106 Ohio App.3d 27.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APA02–202.

Decided Aug. 22, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1996), 74 Ohio St.3d 1509, 659 N.E.2d 1286.

*Michael Miller*, Franklin County Prosecuting Attorney, and *Steven L. Taylor*, Assistant Prosecuting Attorney, for appellee.

*Dennis C. Belli*, for appellant.

DESHLER, Judge.

This is an appeal by defendant, Norman W. Gantz, from a judgment entry of conviction and sentence entered by the Franklin County Court of Common Pleas.

On August 23, 1993, defendant was indicted on five counts of drug trafficking, five counts of unlawful possession of a dangerous ordnance and two counts of possession of criminal tools. Defendant entered a plea of not guilty.

On February 22, 1994, defendant filed a motion to suppress evidence seized during a search of his residence at 2110 N. 4th Street, Columbus, on the grounds that there was a lack of probable cause to issue a search warrant and that material false statements were made in the affidavit in support of the search warrant. On October 18, 1994, the trial court held a hearing on the motion to suppress. Following the hearing, the trial court overruled defendant's motion to suppress.

Defendant subsequently withdrew his guilty plea and entered a no contest plea to each of the twelve counts. The trial court found defendant guilty of all counts and entered sentence by entry filed January 26, 1995.

On appeal, defendant sets forth three assignments of error for review:

"Assignment of Error No. 1

"The common pleas court's denial of defendant-appellant's motion to suppress physical evidence seized during a search of his residence by law enforcement officers pursuant to a warrant constituted error and deprived defendant-appellant of his rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 14 of the Ohio Constitution. The 'four corners' of the affidavit submitted with the application for the search warrant did not provide the issuing magistrate with a substantial basis for concluding that probable cause existed to search.

"Assignment of Error No. 2

"The common pleas court's finding that a materially false statement contained in the affidavit submitted in support of the application for a warrant to search defendant-appellant's residence was not made intentionally or with reckless disregard for the truth is contrary to the evidence. The court's refusal to excise the statement from the affidavit and conduct a *de novo* review of the remaining content of the affidavit and evaluation of the existence of probable cause constituted error and deprived defendant-appellant of his rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 14 of the Ohio Constitution.

"Assignment of Error No. 3

"Defendant-appellant having filed an affidavit of inability to pay mandatory fines, the court of common pleas erred when it imposed several mandatory fines under R.C. 2925.03(H) without first making express findings upon his claim of indigency and inability to pay a fine."

Under the first assignment of error, defendant contends that the trial court erred in denying defendant's motion to suppress. The issue raised is whether the

magistrate had a substantial basis for concluding that probable cause existed for the issuance of the search warrant.

On August 11, 1993, Detective David Hunt, of the Columbus Police Department, filed an affidavit with the Franklin County Municipal Court, requesting the issuance of a warrant to search defendant's residence, located at 2110 N. 4th Street, Columbus, for marijuana. Detective Hunt has been employed as a deputy sheriff for Franklin County for the past twelve years and has participated in over fifty search warrants involving the seizure of controlled substances. The affidavit alleged the following facts.

On July 29, 1993, Lieutenant Dennis Thomas of the Franklin County Sheriff's Office Special Investigations Unit received an anonymous telephone call indicating that Norman Gantz resided at 2110 N. 4th Street and that he "is growing marihuana under strong lights and utilizing hydroponics in his residence * * *." The caller further stated that Gantz "is preparing 'acid' (LSD) on the third floor of the residence," that he has cameras and alarms on the doors and windows, and that he is beginning to fortify the residence by using wooden pallets.

Later that evening, Detective Hunt and Detective Clyde Phillips drove past the address given by the caller and both detectives observed windows on the second and third stories of the residence covered by aluminum foil and alarm sensor strips. The affidavit averred that such measures are often employed by individuals to conceal indoor marijuana growing operations as well as to reflect light upon plants. The detectives further noted plywood and lumber lying on the front porch.

The affidavit stated that a routine background check was conducted on the name of Norman Gantz, indicating that he resided at 2110 N. 4th Street and that his criminal history record revealed an arrest for drug abuse by Columbus police officers in 1980 and an arrest, on August 27, 1992, by the Mayfield Heights police for possession of marijuana. Regarding the 1992 arrest, the affidavit stated that defendant admitted that marijuana found in an Ajax cleanser canister belonged to him. At the time of that arrest, defendant had $700 in his possession in $50 and $100 denominations, even though he was just a college student at the Ohio State University and claimed no employment. Defendant's car was impounded during the arrest and a gas mask was found in the vehicle. The charge of possession was subsequently dismissed in exchange for a guilty plea on a drunk driving charge.

The detective's affidavit further stated that a call was placed to the Columbus Southern Power Company ("Columbus Southern"), requesting billing information for defendant's residence and for the residences on either side of defendant's house. The records obtained indicated that the residence at 2108 N. 4th Street was billed at an average of $42.91 a month, that the residence at 2112 N. 4th

Street was billed at an average of $63.07 a month, and that defendant's residence was billed at an average of $174.84 a month, being nearly three times higher than the other residences.

The affidavit stated that on August 2, 1993, a call was placed to the Ohio State University Registrar's Office. According to the registrar's office, the defendant received a bachelor's degree in engineering in the spring of 1993.

On August 4, 1993, a grand jury subpoena was issued to Columbus Southern for power consumption records. The same residences noted above were used for comparison purposes. The records indicated that the average kilowatt usage per month at 2108 N. 4th Street was 576 KWH, that average usage at 2112 N. 4th Street was 1037 KWH, and that the average usage at defendant's residence was 2731 KWH. The affidavit stated that surveillance of defendant's residence failed to reveal any window or central air conditioning unit which might explain the higher usage. The affidavit further stated that a subpoena was issued to the Columbus Division of Water regarding water usage records for the residence but it was discovered that defendant's residence and the residence at 2108 N. 4th Street shared a water main, making it unable to determine the exact water usage for defendant's residence.

On August 6, 1993, Detective Gerry Goetz of the Franklin County Sheriff's Department and Special Agent Tim Gray of the Ohio Bureau of Criminal Investigation and Identification attempted "thermal imaging" of the defendant's residence but, according to Gray, the attempt was inconclusive. Detective Goetz noticed a hose protruding from the foundation of defendant's residence, an occurrence sometimes consistent with hydroponics.

The affidavit stated that on August 6, 1993, the anonymous caller placed another call with the police. The caller stated that defendant had purchased a $15,000 speed boat some time back, even though defendant was not employed. The caller further stated that defendant had numerous charts on the walls depicting various ways to "blow up" buildings, and that assorted riot gear was located on the first floor of defendant's residence, such as a riot shield, gas mask and tear gas. The caller also indicated that there were "booby traps" throughout the residence and that the windows and doors were wired to an internal alarm system.

On August 9, 1993, a call was placed to an agent of the Ohio Department of Taxation. According to the agent, defendant had not filed a state income tax return for the past three years. Further, a credit report obtained indicated that defendant failed to show any employment and only had one open account, an American Express card.

On August 19, 1993, a call was placed to the Ohio Department of Natural Resources. According to records filed with that department, defendant purchased a 1988 Sunbird boat on July 21, 1992, with a purchase price of $10,900 with no lien shown. The boat was sold by Bolton's Marine Sales, Inc., Eastlake, Ohio. According to the dealer, the boat was paid for with a $5,000 check from John H. Gantz and $6,551.75 in cash paid by defendant, for a total payment of $11,551.75, which included the title fee and state and county taxes. Further, a registration check through the Bureau of Motor Vehicles indicated that defendant had two vehicles registered in his name, a 1976 Chevrolet, purchased May 14, 1991, and a 1974 Ford, purchased May 10, 1988.

On August 13, 1993, based upon the representations in the detective's affidavit, a search warrant was issued by a judge of the Franklin County Municipal Court. The search of defendant's residence revealed an indoor marijuana growing operation which included the use of high intensity lights, fans, a filtering system and a water pump. Two hundred seventy-seven marijuana plants were discovered at the residence. In addition to the marijuana, police also found doses of LSD and psilocybin mushrooms on the premises. A laboratory to grow mushrooms was discovered, consisting of a pressure cooker, incubator and mason jars. The police also discovered various C02 cartridges with propellant powder and fuse and one PVC pipe.

Prior to trial, defense counsel filed a motion to suppress the evidence seized from defendant's residence, contending that the search warrant was not supported by probable cause and that the affidavit contained knowing or recklessly false statements. On October 18, 1994, the trial court heard evidence on the motion to suppress. The trial court subsequently denied the motion to suppress, finding that probable cause existed to issue the warrant and that defendant had failed to show that a deliberate or reckless falsehood had been made.

In *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, the United States Supreme Court abandoned the "two-pronged" test of *Aguilar v. Texas* (1964), 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and *Spinelli v. United States* (1969), 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, which had previously governed the determination and review of the sufficiency of probable cause regarding an affidavit submitted in support of a search warrant, and adopted instead a "totality of the circumstances" test. *State v. George* (1989), 45 Ohio St.3d 325, 328, 544 N.E.2d 640, 643. In *Gates*, the court held:

" * * * The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a

reviewing court is simply to ensure that the magistrate had a 'substantial basis for * * * conclud[ing]' that probable cause existed. * * * " *Id.* at 238–239, 103 S.Ct. at 2332, 76 L.Ed.2d at 548–549.

In *George, supra,* the Ohio Supreme Court discussed, in the context of *Gates,* the form of review a court must undertake in examining the sufficiency of probable cause in an affidavit supporting a search warrant issued by a magistrate. At paragraph two of the syllabus, the court held:

"In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. (*Illinois v. Gates* [1983], 462 U.S. 213 [103 S.Ct. 2317, 76 L.Ed.2d 527], followed.)"

Defendant raises two basic arguments under his first assignment of error: The informant's tip was lacking in detail and thus did not provide a substantial basis for the issuance of the search warrant, and the police did not adequately corroborate the informant's information.

Defendant's contention that the informant's tip was lacking in detail is unpersuasive. The informant, in addition to giving defendant's name and address, provided statements indicating that he had personal knowledge of activities inside defendant's residence. These statements included information that defendant was engaged in growing marijuana under strong lights and utilizing hydroponics, that he was preparing LSD on the third floor of the residence, that cameras and sensor alarms were installed on doors and windows, that defendant had begun to fortify the residence with wooden pallets, that there was riot gear on the first floor and numerous charts on the walls depicting ways to blow up buildings, and that booby traps were set in the residence. The informant also told police that defendant, although unemployed, had purchased a speed boat. While we note that independent corroboration of the tip was necessary to establish probable cause, we find that the informant's statements provided sufficient detail to reasonably suggest that the informant had access to reliable information about the activities he reported. See, *e.g., People v. Quintana* (Colo.1990), 785 P.2d 934, 939 (affidavit providing that informant stated defendant was growing marijuana in room in detached garage using artificial "grow lights"

and also using timing device to irrigate plants contained such detail which, supported by police investigation, established probable cause to search premises).

We also find unpersuasive defendant's contention that the police failed to adequately corroborate the informant's tip. As a result of the informant's call, the police confirmed the following facts which either corroborated or tended to corroborate the informant's information: an individual named Norman Gantz resided at 2110 N. 4th Street; there were alarm sensors on the windows; defendant was apparently not employed; defendant had purchased a speed boat; the police observed plywood and other construction materials on the porch, tending to corroborate the informant's statement that defendant was in the process of fortifying the residence; a check with the Mayfield police indicated that in a previous drug arrest, less than a year before the events at issue, a gas mask was found in defendant's possession, tending to corroborate the informant's statement that he had seen a gas mask in defendant's residence; and the police observed a hose protruding from the foundation of the residence, a fact tending to corroborate the informant's statement that defendant was using hydroponics.

In addition to certain facts related by the informant and later confirmed, police investigators also made independent findings which further corroborated the informant's information. Specifically, the police observed aluminum foil on the upstairs windows of the residence and their investigation revealed that defendant's electrical bill was larger than comparable residences in the area. Both of these facts tended to corroborate the informant's statement that defendant was growing marijuana inside the residence. Detective Hunt, in his affidavit, averred that he had experience in investigations involving controlled substances and that the use of aluminum foil on windows is indicative of measures taken by individuals to conceal indoor marijuana growing operations as well as to reflect light upon the plants. Detective Hunt's affidavit further averred that indoor marijuana growing operations result in a markedly higher use of electricity due to the constant running of assorted high intensity lamps.

Other jurisdictions have previously held that electrical usage data is a relevant factor in determining probable cause. See *State v. Ledbetter* (Idaho 1990), 118 Idaho 8, 794 P.2d 278, 281 (electrical usage data indicating that defendant was using larger amounts of electricity than were other comparable homes in the area may be used to establish probable cause to search for drugs); *Quintana, supra,* at 940 (detective's verification of dramatic increase in defendants' electrical usage lends credit to informant's statement that defendants were growing marijuana plants inside detached garage through the use of electrical "grow-lights"); *United States v. Olson* (C.A.8, 1994), 21 F.3d 847, 850 (electric record showing abnormally high electrical usage relevant to probable cause determination);

*United States v. Brady* (E.D.Wash.1990), 734 F.Supp. 923, 928 (police verification of electric bills disclosed usage inconsistent with normal residential usage).

Other jurisdictions have also held that the presence of aluminum foil on windows may be used in determining probable cause. See *United States v. Robertson* (C.A.8, 1994), 39 F.3d 891, 894 (agent's observation of aluminum foil over window suggested effort to keep light in defendant's trailer and was relevant in finding of probable cause to issue search warrant); *State v. Middleton* (Ore.1986), 720 P.2d 1310 (police officer's affidavit indicating that aluminum foil is often used to cover windows to reflect or retain heat and conceal contents from view was relevant in probable cause determination).

Defendant contends that college students often use aluminum foil to cover windows and thus there was a reasonable explanation for the presence of foil at defendant's residence. Even accepting the premise that college students routinely use aluminum foil in lieu of curtains, defendant's analysis misses the mark. Assuming that we were to view each fact individually, we might agree that the presence of aluminum foil was an innocent fact which, viewed in isolation, would not be relevant for probable cause considerations. However, "we consider the evidence as a whole, and '[v]iewing the evidence in this manner it may be truly said that the total may be a sum greater than its parts.'" *United States v. Fooladi* (C.A.5, 1983), 703 F.2d 180, 184. When viewed as a whole, the "'corroboration of minor, innocent details can suffice to establish probable cause.'" *Robertson, supra,* 39 F.3d at 894.

In *Robertson,* a similar argument was raised by defendants suggesting explanations for the presence of aluminum foil on the windows of their residence. In *Robertson,* the court, citing the fact that numerous cases have noted that high intensity lights are used to grow marijuana indoors and generate excess heat, held that the fact defendants "can now advance alternative explanations for aluminum foil on the windows * * * does not undermine the magistrate's decision to credit the agent's reasonable inferences." *Id.,* 39 F.3d at 894. Similarly, in the instant case, the fact that defendant can now point to an explanation for the aluminum foil does not undermine the detective's belief at the time that his observation corroborated the informant's tip that defendant was growing marijuana indoors under high-intensity lights.

The duty of the magistrate is to make a practical, common sense determination, based upon the *totality of the circumstances,* regarding whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Gates, supra,* 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. Based upon the totality of the circumstances, including the informant's information, corroboration of this information by the police and independent investigation by the police revealing additional facts, the detective's affidavit sufficiently supported

the judge's determination that there was a fair probability that marijuana and other evidence of criminal activity would be found at defendant's residence. Thus, there was a substantial basis for determining that probable cause existed for issuance of the warrant. *George, supra.*

Defendant's first assignment of error is overruled.

██ Under the second assignment of error, defendant asserts that the trial court erred in failing to find that a statement by the detective in the affidavit submitted in support of the search warrant was made intentionally or with reckless disregard for the truth. Defendant argues that, despite the fact that an air conditioning unit was located at his residence, Detective Hunt stated in his affidavit that there was no air conditioning unit which might explain a higher electrical consumption; defendant maintains that the trial court's finding that defendant failed to show intent or reckless disregard is contrary to the evidence.

Defendant's claim is brought under *Franks v. Delaware* (1978), 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667. In *Franks,* the court held that, in order to challenge the veracity of a search warrant, a defendant must establish by a preponderance of the evidence that a false statement, knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the affidavit. *Id.* at 155–156, 98 S.Ct. at 2676, 57 L.Ed.2d at 671–672. Under this standard, "[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth * * *. Allegations of negligence or innocent mistake are insufficient." *Id.* at 171, 98 S.Ct. at 2684, 57 L.Ed.2d at 681–682.

Initially, we note that we disagree with defendant's characterization of the detective's statement. While defendant contends that the detective stated that there was no air conditioning unit, the affidavit provides that "[s]urveillance of 2110 N. 4th has failed to reveal any window or central air conditioning * * *." Thus, the affidavit does not state, as asserted by defendant, that there was no air conditioning unit at the residence; rather, the detective averred that his surveillance failed to reveal any air conditioning.

Detective Hunt testified at the suppression hearing that at the time he conducted his surveillance, which he indicated was from a distance of approximately thirty to forty yards from the residence, he did not believe that there was an air conditioning unit. Detective Hunt, while acknowledging that pictures taken by defense counsel indicated the presence of an air conditioning unit at defendant's residence, stated that the pictures he was able to obtain did not show such a unit. The detective explained that he did not feel that he could get closer to defendant's residence without compromising the investigation.

The trial court, in ruling upon the *Franks* issue, noted that the photographs taken by defense counsel were taken by an individual standing on the actual

premises as opposed to the detective's photographs which were taken off the premises from a much greater distance. The court noted that it would have been inappropriate for the detective to have gone onto the premises to take photographs similar to those taken by the defense. The court further noted that the photographs taken by the detective failed to indicate an air conditioning unit on the premises. Upon consideration of all of the evidence, the court concluded that defendant had failed to show a disregard for the truth or deliberate falsehood.

We find no error by the trial court. Based upon the testimony provided by the detective, the trial court could have reasonably found the detective's explanation plausible. Upon review of the record, we agree with the state's contention that defendant failed to show, by a preponderance of the evidence, that Detective Hunt was aware of an air conditioning unit at the time of the affidavit. Further, even assuming that the detective should have undertaken further inquiry regarding the presence of an air conditioning unit, the evidence at best merely raises the issue of negligence. Under the *Franks* standard, "[a]llegations of negligence or innocent mistake are insufficient" to prove deliberate falsity or reckless disregard for the truth. *Franks, supra*, 438 U.S. at 171, 98 S.Ct. at 2684, 57 L.Ed.2d at 682.

Defendant's second assignment of error is overruled.

■ Under the third assignment of error, defendant asserts that the trial court erred in imposing mandatory fines pursuant to R.C. 2925.03(H) without first making express findings upon his claim of indigency and inability to pay a fine. Defendant contends that defense counsel, during the sentencing hearing, brought to the attention of the court the fact that defendant had filed an affidavit of indigency; however, the court failed to address the issue of indigency.

In the present case, defendant was found guilty of trafficking in drugs pursuant to R.C. 2925.03. R.C. 2925.03(L) provides:

"No court shall impose a mandatory fine pursuant to division (H) of this section upon an offender who alleges, in an affidavit filed with the court prior to his sentencing, that he is indigent and is unable to pay any mandatory fine imposed pursuant to that division, if the court determines that the offender is an indigent person and is unable to pay the fine."

The record indicates that defendant filed an affidavit of indigency prior to the sentencing hearing. The record also supports defendant's contention that the trial court did not properly rule upon the issue of defendant's indigency. Specifically, during sentencing, defense counsel raised the issue of defendant's affidavit of indigency and also requested an appeal bond. Defense counsel pointed out that defendant had recently obtained employment. The trial court granted defendant's request for appeal bond but, regarding the issue of a fine,

stated that, "I don't know how this will turn out in terms of the job and his affidavit of inability to pay the fines, but at this point at least with a bond being set, I'm not going to waive the fines."

Thus, it appears that the trial court imposed the fine subject to further disposition depending upon defendant's employment situation. We find that defendant was entitled to a determination on the issue of indigency and therefore we remand for the trial court to make a proper ruling on this issue. Accordingly, defendant's third assignment of error is sustained to the limited extent provided above.

Based upon the foregoing, defendant's first and second assignments of error are overruled, the third assignment of error is sustained to the extent provided, the judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded to the trial court for further proceedings in accordance with law and consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

CLOSE and HOLMES, JJ., concur.

ROBERT E. HOLMES, J., retired, of the Supreme Court of Ohio, sitting by assignment.