W. JONES,
concurring.
I concur with the majority’s Opinion affirming the decision of the district court, but I disagree with the basis on which the Majority does so. Decisions of the Court of Appeals are not binding on this Court and, therefore, it is unnecessary to overrule State v. Burnside, 113 Idaho 65, 741 P.2d 352 (Ct.App.1987). Instead, the standard used there should be abolished and this Court should adopt a new standard for the definition of “daytime” for the purpose of executing a daytime-only search warrant.
The Majority notes the obvious deficiencies in the Burnside definition of daytime in footnote 1. The Majority recognizes that “it is likely difficult to discern whether natural light alone was sufficient to identify another’s features, or alternatively, whether visibility was due to a combination of natural light and artificial light.” Such difficulties can lead to conflicting testimony whether another person’s features could or could not be determined by natural light alone. Often in the situation of executing a search warrant, there might well be a combination of some natural light as well as artificial light, such as street lights, lights from adjoining windows or lights at doors or businesses in the vicinity. See Atlanta Enters, v. Crawford, 22 F.2d 834, 837 (N.D.Ga.1927) (noting that whether there was sufficient daylight for a warrant executed in a theater on a lighted street was a matter of speculation). Indeed, another person’s features might be distinguishable with the aid of moonlight alone on a clear, full-moon evening, at least from a short distance. The Burnside standard also has no defining factors, such as whether it requires the ability to discern another person’s features from a literal face-to-face confrontation or to distinguish another person’s features from 100 yards away. It also says nothing about the eyesight of the person seeking to determine the other person’s features. With the same lighting conditions, some people might be able to distinguish another person’s features from 100 yards while persons with weaker eyesight might not be able to do so from 10 feet away. In short, the Burnside standard is really no standard at all. It leaves police and courts without any significant guidance when a daytime search warrant can be served. It also leads to court action to resolve conflicting testimony as to the lighting conditions and who could see what from where.
The foundation of the daytime-only search warrant is for the protection of persons at a time of day or night when they have a heightened expectation of privacy that should not be disturbed by a knock on the door and the presentation of a search warrant. There can be no serious dispute that when persons have retired for the evening they have a greater expectation of privacy that should not be disturbed until normal activities resume in the morning. For that reason, I believe this Court should adopt a bright-line test, such as Federal Rule of Criminal Procedure 41(a)(2)(B), which defines daytime as the “hours between 6:00 A.M. and 10:00 P.M. according to local time.”
There are a number of advantages to adopting a time-based standard such as the federal rule. Americans today do not structure their daily routines according to how much daylight is available. They most often prepare for work, socialize, and pursue leisure activities according to the clock, not according to the sun. Because we now ex *408 pect similar amounts of privacy at a given time of the day regardless of what month it is, adopting the federal rule would ensure that the police execute warrants within the same hours, even on the summer or the winter solstices. The rule would provide a bright line that all the State’s magistrates can easily and uniformly apply.
I recognize that there are, for instance, many people who work the midnight shift and might well be sleeping at a time of full daylight. I also realize that such a rule could be adopted by amendment to the Idaho Criminal Rules, but I do not see an overwhelming need to do so when the matter can simply be handled by departing from the Burnside standard and adopting a new definition of daytime. If the standard is to be changed, whether it be by court rule or decision, it will be this Court that will do it. I believe it should be done now.
Although I would adopt a new standard, I nevertheless agree with the decision to affirm the district court because the police officers in the present ease complied with the Burnside standard which was the law in effect at the time of this particular search. The new standard I propose would be effective only after the date of the Court’s decision.