[Cite as *State v. Leibold*, 2013-Ohio-1371.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                    :

     Plaintiff-Appellee                       :          C.A. CASE NO.    25124

v.                                               :          T.C. NO.    10CR3315

ROBERT M. LEIBOLD                                :          (Criminal appeal from
                                                            Common Pleas Court)

     Defendant-Appellant                      :

                                                 :

. . . . . . . . . .

# **O P I N I O N**

Rendered on the _____5th_____ day of _____April_____, 2013.

. . . . . . . . . .

MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
     Attorney for Plaintiff-Appellee

JOHN J. SCACCIA, Atty. Reg. No. 0022217, 1814 East Third Street, Dayton, Ohio 45403
     Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}    Robert Leibold appeals from his conviction on one count of illegally cultivating marijuana equaling or exceeding 1,000 grams in the vicinity of a school or

juvenile, in violation of R.C. 2925.04(A)(C)(4). After Leibold pled no contest to the charge, he was sentenced to community control sanctions for a period not to exceed five years.

{¶ 2} Leibold contends that the trial court erred in overruling his motion to suppress evidence, because the affidavit underlying the search warrant was insufficient to establish probable cause. Leibold additionally argues that his rights under the Fourth Amendment and to procedural and substantive due process were violated by the execution of a subpoena not authorized by law.

{¶ 3} We conclude that the trial court erred in overruling the motion to suppress evidence. The affidavit underlying the search warrant was insufficient to establish probable cause. Furthermore, although the clerk of courts erred in issuing a subpoena for electricity usage records that the police sought prior to applying for a search warrant, the error was not a constitutional violation and was non-fundamental. Accordingly, the judgment of the trial court will be reversed and the case will be remanded for further proceedings consistent with this opinion.

I. Facts and Course of Proceedings

{¶ 4} The State's evidence at the suppression hearings revealed the following facts.

{¶ 5} Huber Heights Police Officer Aaron Harlow received an anonymous tip on his personal cell phone regarding a marijuana cultivation operation at 7243 Carmelita Drive in Huber Heights, Ohio. The anonymous informant, a male, stated that Robert Leibold lived at the residence and was growing approximately 100 marijuana plants in his bedroom.

The call was from a blocked number and Harlow did not recognize the voice. This was not an informant Harlow knew, the conversation lasted only a few minutes, and Harlow did not receive information from the caller as to how the caller knew about Leibold or that led him (Harlow) to believe he (the caller) was reliable.

{¶ 6} Several days later, Harlow was working with Huber Heights Police Officer Kerry Combs, who had worked in the detective section of the Huber Heights Police Department for about four years, but was then a patrol officer. Harlow mentioned the tip he had received, and Combs ran a quick computer check. Combs found that he had dealt with Leibold in 2005 in connection with a marijuana grow operation at the same residence.

{¶ 7} Combs told Harlow that they should subpoena records from Dayton Power and Light (DP&L) to see if Leibold's electricity usage was "out of whack" with comparable residences in the neighborhood. Combs said he had sent out such subpoenas "dozens" of times during his years as a drug detective, in order to "see if we needed to pay attention to this house." Combs explained, "We'll run their record check through our system. If we come back with any hits of previous drug history or any type of previous criminal background that may, you know, possibly be tied in with drug history, at that point in time we'll issue a subpoena out to see if we're in the ballpark and need to put more work into it."

{¶ 8} Combs and Harlow prepared the subpoena and asked a clerk from the Area Two Court (now known as the Montgomery County Municipal Court) to sign off on the subpoena. The Clerk's office did not prepare the subpoena, and there was no case caption or case file at the time. No judicial official, prosecutor, or judge had any oversight on the subpoena. The subpoena asked for information on energy usage between October 1, 2009,

and the present date – which was July 29, 2010 – for 7243 Carmelita Drive (Leibold's address), as well as other nearby addresses, including 7237, 7301, 7307, and 7312 Carmelita Drive. All the other residences were within eyesight of Leibold's driveway, and appeared to have very close to the same square footage as Leibold's house.

{¶ 9} The records obtained from DP&L showed that Leibold's usage of electricity was usually double and sometimes triple the usage of the comparable properties. Officers Harlow and Combs also spoke with an individual from DP&L's security department, who said that Leibold's electricity usage was about three times as much on a regular basis as the other comparable properties.

{¶ 10} The records of the meter readings for Leibold's house between October 2009 and July 2010 showed that the monthly "metered usage" ranged from a low of 1,413 kWh (May) to a high of 3,377 kWh(July). The readings at Leibold's house for June 2010 and July of 2010 were 2,207 kWh and 3,377 kWh, respectively. The electricity usage at the neighboring homes had ranges of (1) 248 to 766 kWh, (2) 745 to 1,374 kWh, (3) 468 to 827 kWh, and (4) 367 to 2,015 kWh.

{¶ 11} Based on the information from DP&L and the fact that a search warrant for the same address had previously been obtained in 2005, Officer Harlow prepared a search warrant for 7243 Carmelita Drive. The affidavit stated:

On Thursday July 29, 2010, 15:00 PM, Ofc. Harlow, the affiant, received information concerning a marijuana cultivation operation at 7243 Carmelita Dr. with Robert Leibold as the operator. The anonymous source advised that Leibold lived at the residence and was growing approximately

100 plants of marijuana in a bedroom. With that information in hand Ofc. Harlow then checked local records at the address in question and found that on 11/2/05 Ofc. Combs had conducted a search warrant at the same address 7243 Carmelita Dr. with Leibold also being the resident. This search warrant was as a result of a marijuana grow operation also.

Ofc. Combs then provided the affiant with information to contact DP&L Investigator Gary Gabringer with a subpoena for records on 7243, 7237, 7301, 7307, and 7312 Carmelita Dr. concerning the usage of electricity. Upon receiving subpoena Gabringer returned the information to us by Fax. Upon checking the records and then confirming the information with Gabringer that the usage of 7243 Carmelita Dr. was almost triple that of the comparables. This is consistent with that of a marijuana cultivation operation and is also consistent with the records from 11/2/05 when the last search warrant was served.

There were no facts before the magistrate suggesting the number of residents in each of the comparable residences, what, if any, electronics or power equipment was in use for what hours at the various residences, and/or other factors relevant to the discrepancies among the residences in their usage of electricity.

{¶ 12} At approximately 6:08 p.m. on July 29, 2010, the officers took the search warrant to a judge for the Montgomery County Municipal Court and showed the judge the DP&L records. According to the testimony at the motion hearing, the judge was told about the records for the 2005 prior search, but they were not presented to the judge. After

reviewing the affidavit and the current records, the judge signed the warrant.

{¶ 13}    About an hour after the warrant was signed, five officers, including Harlow and Combs, went to 7243 Carmelita Drive.   The warrant authorized the officers to search for the following items:

> Any drugs of abuse, drug paraphernalia, tools and supplies used in the cultivation of marijuana, and any monies related to the sale of narcotics along with documentation of sales or bank records, and any weapons that are commonly associated with the trafficking of narcotics.

{¶ 14}    Harlow and Combs went to the front door of the house, and two other officers went to the back.   Harlow testified that he could smell raw marijuana even before Leibold opened the door.   Leibold was handcuffed, removed from the house, and placed in a cruiser.   A female was also removed from the home and placed in a separate cruiser.   The officers then searched the house and an attached garage, and located various marijuana plants, bags of marijuana, cash, and other items.   Harlow testified that he found a big bag of what looked to be marijuana cuttings, stems, and seeds on a workbench in the garage. A shoe box was next to this bag, and upon opening the box, Harlow saw what looked like "typical pornography."   He also saw a CD that appeared to involve young juvenile females. The box was confiscated and the videos were later viewed.

{¶ 15}    In January 2011, Leibold was indicted on one count of knowingly cultivating marijuana exceeding 1,000 grams in the vicinity of a school or juvenile, in violation of R.C. 2925.04(A)(C)(4); one count of possessing a substance, device, or instrument with intent to use it criminally in commission of a felony, in violation of R.C.

2923.23(A); and one count of buying, possessing, or controlling obscene material that has a minor as one of its participants in violation of R.C. 2907.321(A)(5). Leibold pled not guilty, and filed a motion to suppress evidence.

{¶ 16} Hearings on Leibold's motion to suppress were held on August 23, October 4, and November 22, 2011. The records from the 2005 case were not available for the first suppression hearing, and the hearing was continued to give the State time to obtain the records. At the second hearing, Officer Combs testified that the statement in the last paragraph of the search warrant, regarding the consistency of the information with records from November 2005, was false. Combs stated that when he pulled up the 2005 records on his computer in his car, he did not actually retrieve the full report. He recalled that he had done a search and what the search for Leibold's residence had involved. However, he had confused Leibold's 2005 search with a different case, where he had "pulled records." Combs' testimony, thus, indicates that the 2005 search of Liebold's house was not based on records from the electric company. Combs indicated that he had misstated that fact in the 2010 search warrant, and that it was a mistake on his part.

{¶ 17} After hearing the evidence, the trial court overruled the motion, concluding that a substantial basis existed for the search warrant. Leibold then pled no contest to count one (cultivating), and the remaining counts were dismissed. Leibold appeals from his conviction.

II. Did the Trial Court Err in Finding Probable Cause for the Search Warrant?

{¶ 18} Leibold's first assignment of error states:

The trial court committed prejudicial error finding that an affidavit for a

search warrant is sufficient to establish probable cause to search a home based only upon an unknown informant's allegation that marijuana is growing in a home and the occurrence of higher electric usage then [sic] some neighbors according to electric utility records.

{¶ 19} In his first assignment of error, Leibold contends that the trial court erred in finding probable cause for issuance of the search warrant, because the only material allegations in the affidavit concern an anonymous tip and the incidence of higher electricity use than neighboring residences.

{¶ 20} The standards for reviewing decisions on suppression motions are well-settled. In ruling on motions to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994), citing *State v. Clay*, 34 Ohio St.2d 250, 298 N.E.2d 137 (1972). Accordingly, when we review suppression decisions, "we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*

{¶ 21} In the present case, Leibold frames the issue as a question of law, contending that the facts in the affidavit could not support a finding of probable cause, even if believed.

{¶ 22} "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before

him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, quoting from and following *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

**{¶ 23}** The Ohio Supreme Court also stressed in *George* that:

In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.

*Id.* at paragraph two of the syllabus.

**{¶ 24}** As an initial matter, we agree that electricity use data is a relevant factor for purposes of probable cause. *State v. Gantz,* 106 Ohio App.3d 27, 34-35, 665 N.E.2d 239 (10th Dist.1995), citing *State v. Ledbetter*, 118 Idaho 8, 794 P.2d 278 (Idaho 1990) (electricity usage data may be used to establish probable cause), *People v. Quintana*, 785 P.2d 934, 939-940

(Colo.1990) (dramatic increase in defendants' electricity usage supported informant's statement that defendants were growing marijuana plants inside detached garage through the use of electrical "grow-lights"), *United States v. Olson*, 21 F.3d 847, 850 (8th Cir.1994) (record showing abnormally high electricity usage relevant to probable cause determination), and *United States v. Brady*, 734 F.Supp. 923, 928 (E.D.Wash.1990) (police verification of electric bills disclosed usage inconsistent with normal residential usage).

{¶ 25}  To support his argument that the current search warrant was not based on probable cause, Liebold cites cases in which courts have refused to uphold the validity of search warrants, based on a finding that the only material facts in the affidavit were high electricity consumption and an anonymous informant.  In one of these cases, the district court concluded that the anonymous sources were of questionable reliability, and that "[t]he force of the electric power records *alone* does not persuade the Court of the probability of a marijuana grow."  (Emphasis added.) *United States v. Holmes*, 175 F.Supp.2d 62, 70 (D.Me.2001).

{¶ 26}  In *Holmes*, the district court observed that "[a]n affiant's knowledge of a target's prior criminal history is also material to the probable cause determination."  *Id.* at 70. The court stressed that "[c]orroboration of an informant's tip may take other forms, such as a check of a target's criminal record, and surveillance is not necessarily required in all circumstances."  (Internal citations omitted.)  *Id.* at 70 and n.4, citing *United States v. Burke,* 999 F.2d 596, 598 (1st Cir.1993).  The court in *Holmes* nevertheless found that the information gathered to bolster the informant's reliability in that case was insufficient to create a significant indicia of reliability.  The court concluded that the unreliable tip plus the electric power records (which did not necessarily reflect distinct growing cycles, as asserted by the law

enforcement officer) were insufficient to establish probable cause.

{¶ 27} In reaching its conclusion, the *Holmes* court distinguished *Burke*, in which the original source of the information about a grow operation was also anonymous. In *Burke*, however, the First Circuit Court of Appeals found "ample" evidence to establish probable cause. *Burke* at 599. In particular, the court found that the several factors vouched for the reliability of the informant, including the officer's "experience and knowledge as a result of his involvement in the 1989 search of [the defendant's] home." *Id.* at 598. This knowledge included the fact that marijuana plants had been seized two years earlier from the defendant's home. *Id.* In addition, the court relied on the officer's own investigation, which showed "an unusually high consumption of electricity after a lapse in time that coincided with the period immediately following the 1989 search and seizure, when [the defendant] predictably would have been inclined to lie low." *Id.* at 599.

{¶ 28} The State argues that this case does not involve only an unreliable informant and electricity usage records, as Leibold claims. Rather, the State asserts that the 2010 search warrant affidavit demonstrates that one of the investigating officers (Combs) had prior experience with Leibold in connection with the same residence and with the same offense, facts which are pertinent to the issue of probable cause.

{¶ 29} The extent of Officer Combs' experience with and knowledge of Leibold is not made clear by the affidavit. The affidavit, at paragraph five, says that "on 11/02/05 Ofc. Combs had conducted a search warrant at the same address 7243 Carmelita Drive with Leibold also being the resident. This search warrant was as a result of a marijuana grow operation also." There is no statement whether evidence of a marijuana grow operation was found upon

executing the 2005 warrant or whether Leibold was charged with or convicted of a drug offense as a result of that search. At the suppression hearing, Officer Harlow testified that officers found a marijuana grow operation in 2005, and Leibold was subsequently convicted of felony child endangering in that case, but this information was not included in the affidavit.

{¶ 30} Further, even if marijuana had been found five years earlier, the officer acknowledged that the statement in the 2010 affidavit regarding any checking or use of electricity usage records for Leibold's residence prior to obtaining the 2005 warrant was false (albeit unintentionally).

{¶ 31} Ordinarily, "a probable cause inquiry must be confined to the four corners of the affidavit * * *." *State v. Klosterman*, 114 Ohio App.3d 327, 333, 683 N.E.2d 100 (2d Dist.1996). In *State v. Stropkaj*, 2d Dist. Montgomery No. 18712, 2001 WL 1468905 (Nov. 16, 2001), we stated that "[a] search warrant affidavit that is facially sufficient may nevertheless be successfully attacked if the defendant can show by a preponderance of the evidence that the affiant made a false statement intentionally, or with reckless disregard for the truth." *Id.* at *2, citing *Franks v. Delaware*, 438 U.S. 154, 155-156, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and *State v. Waddy*, 63 Ohio St.3d 424, 441, 588 N.E.2d 819 (1992). "'Allegations of negligence or innocent mistake are insufficient.'" *Gantz*, 106 Ohio App.3d 27, 36, 665 N.E.2d 239 (10th Dist.1995), citing *Franks* at 171.

{¶ 32} The record in the case before us does not contain evidence that Officers Harlow or Combs made false statements intentionally or with reckless disregard for the truth. When the affidavit was prepared and presented to the authorizing judge, both officers believed that Combs had previously obtained records of electricity usage at Leibold's residence. That

belief was later demonstrated to have been incorrect, and the officers' reliance could be viewed as negligent. Their actions do not display an intentional false statement, or reckless disregard for the truth. As a result, there is no basis for looking beyond the four corners of the affidavit.

{¶ 33} Therefore, the only information correctly before the issuing magistrate was that a search warrant for marijuana had been issued in 2005 and the unusually high electricity usage in 2011. This may have been suspicious and justified investigation. Even Officer Combs said that the information from his previous "subpoenas" was used to determine if the police needed to further investigate a particular location. We hesitate to approve scenarios which would permit police to obtain a warrant based solely on (legally) random inspection of electricity usage records, even for a residence which had been the subject of a prior search.

{¶ 34} Accordingly, Leibold's first assignment of error is sustained.

III. Did the "Subpoena" to DP&L Violate Leibold's Constitutional Rights?

{¶ 35} Leibold's second assignment of error states:

The creation of a subpoena not authorized by law was a violation of Mr. Leibold's Fourth Amendment Rights as it resulted in insight into his home life and violated his rights to procedural and substantive due process.

{¶ 36} In his second assignment of error, Leibold claims that his constitutional rights were violated when the clerk of the Montgomery County Municipal Court issued the subpoena for the DP&L records. In light of our decision on the first assignment of error, this issue is moot. However, since the issue is likely to reappear, we will address it.

{¶ 37} According to Leibold, the clerk of courts, or a deputy clerk, lacks authority to sign and issue subpoenas prepared by the police when no case is pending and there has been

no oversight by a judicial officer or attorney. Without acknowledging a violation, the State argues that the actions of the police would not rise to the level of a constitutional violation because Leibold had no legitimate expectation of privacy in electricity usage records.

**{¶ 38}** We recently concluded that individuals do not have a reasonable expectation of privacy in their electricity usage records, and that the police do not need probable cause in order to obtain the records. *See State v. Coleman*, 2d Dist. Montgomery No. 25248, 2012-Ohio-6042, ¶ 24, citing *United States v. McIntyre*, 646 F.3d 1107 (8th Cir.2011). We held in *Coleman* that the municipal court did not err in granting an order requiring DP&L to turn over the defendant's electricity usage records. *Id.*

**{¶ 39}** The situation in *Coleman* differs from the case before us. Specifically, the detective in *Coleman* presented an affidavit to a municipal court judge requesting a court order compelling DP&L to produce electricity usage records. The judge then signed an order, which was served on DP&L. *Id.* at ¶ 2.

**{¶ 40}** One of the issues we discussed in *Coleman* was whether the Dayton Municipal Court had jurisdiction to issue a court order for a residence located in Harrison Township, which was within the jurisdiction of the Vandalia Municipal Court. *Id.* at ¶ 11 and ¶ 19. We did not specifically resolve this issue. We first noted that the records, themselves, were located in the City of Dayton, which was within the jurisdiction of the Dayton Municipal Court. *Id.* at ¶ 19. We then observed that the affidavit supporting the court order averred that the residence in question was in the City of Dayton. Accordingly, we concluded that the trial court was led to believe in good faith that it could issue the warrant.

**{¶ 41}** We then referred to R.C. 1901.20(B), and noted that it allows courts, in all

felony cases, " 'to conduct preliminary hearings and *other necessary hearings prior to the indictment of the defendant* or prior to the court's finding that there is probable and reasonable cause to hold or recognize the defendant to appear before a court of common pleas, and may discharge, recognize, or commit the defendant.'" (Emphasis sic.) *Id.* at ¶ 20. Based on this grant of authority, we concluded that the trial court did not err when it ordered DP&L to provide the electricity usage records to the police.

{¶ 42} In the case before us, the subpoena was issued by the clerk of the Municipal Court for Montgomery County, Eastern Division. That court has jurisdiction over areas in Montgomery County that are not subject to the jurisdiction of other municipal courts in Montgomery County. See R. C. 1901.01(G), effective July 1, 2010. It is unclear where the DP&L records were kept, but as with *Coleman*, that is not dispositive. Like the municipal court in *Coleman*, the Municipal Court for Montgomery County has authority under R.C. 1901.20(B) to conduct "other necessary hearings" prior to a defendant's indictment. However, no "hearing" was held. Instead, Officer Harlow prepared a subpoena on a form obtained from his office and had it issued by the clerk without any type of hearing or review by a judge.

{¶ 43} R.C. 1901.31(E) provides with respect to the clerk's authority, that:

The clerk of a municipal court may do all of the following: administer oaths, take affidavits, and issue executions upon any judgment rendered in the court, including a judgment for unpaid costs; issue, sign, and attach the seal of the court to all writs, process, subpoenas, and papers issuing out of the court; and approve all bonds, sureties, recognizances, and undertakings fixed by any judge of the court or by law.

**{¶ 44}** This statute does provide that the clerk of courts may issue subpoenas "issuing out of the court." However, before a subpoena can issue from the court, there has to be adherence to R.C. 1901.20(B), which allows the court (not the clerk) to conduct necessary hearings prior to a defendant's indictment.

**{¶ 45}** "The clerk of courts is an elected public official whose duties are regulated by statute. The office of clerk of courts, however, is an office separate and distinct from that of judge of the common pleas court." *State ex rel. Smith v. Culliver*, 186 Ohio App.3d 534, 2010-Ohio-339, 929 N.E.2d 465, ¶ 43 (5th Dist.), citing *Hackett v. Kibbee*, 4 Ohio App.2d 246, 247, 211 N.E.2d 892 (9th Dist.1965). The same would be true of a municipal court clerk. The powers given to the court under R.C. 1901.20(B) are not the powers of the clerk of courts.

**{¶ 46}** R.C. 1901.20(B) does not require the court to hold a specific type of "hearing." However, some type of oversight by the court is required, and a subpoena of this type cannot simply be issued on the basis of a police officer's handing a subpoena to the clerk of courts or a deputy clerk, and instructing the clerk to sign and file-stamp the subpoena. We note that the Dayton Municipal Court uses a procedure in which a judge reviews the subpoena and then signs an order. *Coleman*, 2d Dist. Montgomery No. 25248, 2012-Ohio-6042, at ¶ 2.

**{¶ 47}** Both the State and Leibold refer in their briefs to Crim.R. 17. Leibold contends that Crim.R. 17 was violated, and the State maintains that even if a violation occurred, it was not a constitutional violation and does not require suppression of evidence.

**{¶ 48}** Crim.R. 17 states:

**(A)  For attendance of witnesses; form; issuance**

Every subpoena issued by the clerk shall be under the seal of the court,

shall state the name of the court and the title of the action, and shall command each person to whom it is directed to attend and give testimony at a time and place therein specified. The clerk shall issue a subpoena, or a subpoena for the production of documentary evidence, signed and sealed but otherwise in blank, to a party requesting it, who shall fill it in and file a copy thereof with the clerk before service.

\* \* \*

**(C) For production of documentary evidence**

A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein; but the court, upon motion made promptly and in any event made at or before the time specified in the subpoena for compliance therewith, may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that the books, papers, documents or other objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time they are offered in evidence, and may, upon their production, permit them or portions thereof to be inspected by the parties or their attorneys.

{¶ 49} These sections of Crim. R. 17 refer to the "title of the action," to the "party" requesting a subpoena or a subpoena for documentary evidence, to the production of evidence "prior to the trial," and to inspection by the "parties." Thus, Crim. R. 17(A) and (C) contemplate the existence of a pending action, and a "party" to the action. When the subpoena was issued, however, there was no pending action, nor were there any parties to an action.

Reading Crim.R. 17 in a vacuum would allow *anyone* to have the *clerk* issue a subpoena to *anyone* for *anything*. Crim.R. 17 is not of assistance. As was noted, the court's power to issue subpoenas in situations like the one before us is based on R.C. 1901.20(B).

**{¶ 50}** Because the clerk acted beyond its power in issuing the subpoena for the DP&L records, the issue becomes whether this defect requires suppression of the evidence. We do not believe that suppression is required. As we observed in *Coleman*, individuals do not have a reasonable expectation of privacy in electricity usage records. *Coleman*, 2d Dist. Montgomery No. 25248, 2012-Ohio-6042, at ¶ 24. The violation was statutory, not of constitutional magnitude.

**{¶ 51}** In a related context, we concluded that a "non-fundamental" violation of Crim.R. 41 (dealing with search warrants) does not require suppression, where there is no "'evidence of intentional and deliberate disregard of a provision in the Rule.'" *State v. Hardy*, 2d Dist. Montgomery No. 16964, 1998 WL 543368, *6 (Aug. 28, 1998), quoting *United States v. Vasser,* 648 F.2d 507, 510 (9th Cir.1980).

**{¶ 52}** In *Hardy*, police officers removed a package from a Federal Express facility in Miamisburg, Ohio, and transported it to police headquarters in Dayton, Ohio. The officers then applied for, and received, a search warrant from the Dayton Municipal Court. *Id.* at *1. We concluded that the municipal court had violated Crim.R. 41 by authorizing a search on property that was seized outside its jurisdiction. *Id.* at *4-5. However, we affirmed the decision not to suppress the evidence, since the error was a non-fundamental violation and there was no evidence of "police misconduct, such as 'judge shopping.'" (Citation omitted.) *Id.* at *5. We did stress that "[w]hile there is no evidence of such [intentional and deliberate]

disregard of Crim.R. 41 in this case, there might well be in future cases should the police procedure in this case be repeated in the future." *Id.* at *6.

{¶ 53} The same observations can be made in the present case. The record fails to reveal evidence of intentional police misconduct or awareness of impropriety in obtaining the subpoena. For example, Officer Combs indicated that he had sent out subpoenas for electricity usage records dozens of times while he worked as a narcotics detective. Although Combs did not specify that he had used the same procedure in obtaining the other subpoenas, there is nothing in the record suggesting that he or other law enforcement agencies were aware of an improper procedure. Nonetheless, once police know that appropriate processes have not been followed (as they should by this opinion), their conduct will be viewed through a different lens.

{¶ 54} As a final matter, we note that Leibold relies on *Kyllo v. United States*, 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001), which held that using a thermal-imaging device to measure the amount of heat emanating from a residence is a "search" and is presumptively unreasonable without a warrant. Because there is no reasonable expectation of privacy in the electricity usage records obtained in this case, *Kyllo* is not controlling of our analysis. We will not speculate on arguably-analogous situations that may arise in the future, *see, e.g.,* Balough, *Privacy Implications of Smart Meters*, 86 Chicago-Kent L.Rev. 161 (2011), or if Ohio had statutory provisions regulating the disclosure of utility records, *see, e.g.,* former Wash.Rev.Code.Ann. 42.56.330(6), repealed in 2007; Justice Charles W. Johnson, *Survey of Washington Search and Seizure Law: 2005 Update*, 28 Seattle U.L.Rev. 467, 524-525 (2005).

{¶ 55} Liebold's second assignment of error is overruled.

IV. Conclusion

**{¶ 56}** The judgment of the trial court will be reversed, and the case will be remanded for proceedings consistent with this opinion.

. . . . . . . . . .

FAIN, J., concurs.

WELBAUM, J., dissenting:

**{¶ 57}** I concur as to the Majority's decision overruling the Defendant's Second Assignment of Error. I very respectfully dissent as to the majority's decision sustaining Leibold's First Assignment of Error.

**{¶ 58}** My view differs from the majority for two reasons. First, the trial court did not err in overruling the motion to suppress evidence because the facts in the affidavit underlying the search warrant were sufficient to give the magistrate a substantial basis for concluding that probable cause existed. The magistrate's probable cause determination should be given great deference and doubtful or marginal cases should be resolved in favor of upholding the warrant. *State v. George*, 45 Ohio St.3d 325, 329, 330, 544 N.E. 2d 640 (1989). Secondly, even if the facts in the affidavit supporting the warrant were insufficient to give the magistrate a substantial basis for concluding that probable cause existed under this standard, the exclusionary rule would not apply under the good faith exception set forth in *United States v. Leon*, 468 U.S. 897, 922-923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Accordingly, I would affirm the trial court.

I. **DID THE TRIAL COURT ERR IN FINDING A SUBSTANTIAL BASIS FOR PROBABLE CAUSE?**

**{¶ 59}** The affidavit supporting the search warrant states in part:

The anonymous source advised that Leibold lived at the residence and was growing approximately 100 plants of marijuana in his bedroom. With that information in hand, Officer Harlow then checked local records at the address in question and found that on 11/2/05 Officer Combs had conducted a search warrant at the same address, 7243 Carmelita Dr., with Leibold also being the resident. *The search warrant was as a result of a marijuana grow operation also.* (Emphasis added.)

**{¶ 60}** Within the vessel of great deference accorded the magistrate lies great latitude in drawing inferences from the facts stated in the affidavit. For example, the emphasized portion of the affidavit above states, "The search warrant was as a result of a marijuana grow operation also." Although the affidavit language above does not fully articulate that Officer Combs found marijuana at Leibold's residence during the previous search in 2005, this could be reasonably inferred by the magistrate from the cryptic, yet affirmative language. As a reviewing court we must give great deference to any reasonable interpretation which the magistrate may have used in authorizing the warrant.

**{¶ 61}** Regarding Leibold's First Assignment of Error, the majority relies upon cases in which courts refused to uphold the validity of search warrants, based on a finding that the only material facts in the affidavit were high electric consumption and an anonymous informant. *United States v. Holmes*, 175 F.Supp.2d 62, 70 (D.Me. 2001). Notably, *Holmes* lacks the factual support   pertinent to the issue of probable cause in the present case – the prior experience one of the investigating officers had with the defendant cultivating marijuana in connection with the same residence in 2005.

{¶ 62}   In *United States v. Burke*, 999 F. 2d 596, 597 (1st Cir.1993), the original source of the information about a grow operation was anonymous.   However, the First Circuit Court of Appeals found "ample" evidence to establish probable cause.  *Id*. at 599.   In particular, the court placed most significance on the officer's "experience and knowledge as a result of his involvement in the 1989 search of [the defendant's] home."  *Id*. at 598.   This knowledge included the fact that marijuana plants had been seized two years earlier from the defendant's home.  *Id*.    In addition, the court relied on the officer's own investigation, which showed "an unusually high consumption of electricity after a lapse in time that coincided with the period immediately following the 1989 search and seizure, when [the defendant] predictably would have been inclined to lie low."  *Id*. at 599.

{¶ 63}   The facts in the case before us are far more similar to those in *Burke* than they are to the situation in *Holmes*.   Here,  electrical use is not the only fact in the affidavit that was used to establish probable cause.   As noted, Officer Combs had prior experience with Leibold on a search warrant at the same residence, under the same circumstances, i.e., a marijuana grow operation.

{¶ 64}   The Supreme Court of Ohio has held that doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. *George*, 45 Ohio St.3d at 329-330, 544 N.E.2d 640.   Under this deferential standard of review, I respectfully submit that the warrant should be upheld.

{¶ 65}   Accordingly, I would overrule Leibold's first assignment of error.

II. **EVEN IF THE SEARCH WARRANT AFFIDAVIT IS   INSUFFICIENT, DOES THE EXCLUSIONARY RULE APPLY?**

**{¶ 66}** Even if one concludes there was no substantial basis for issuance of the warrant, the evidence should not be suppressed under the good faith exception to the exclusionary rule. The rule was fully explained by this court in *State v. Mendell*, 2d Dist. Montgomery No. 24822, 2012-Ohio-3178.

The exclusionary rule does not apply to evidence police obtain in good faith in reliance on the validity of a warrant. *State v. Palinkas,* 8th Dist. Cuyahoga No. 86247, 2006-Ohio-2083, ¶ 9. The test for the good-faith exception is whether a reasonably well-trained officer would have known the arrest was illegal despite the issuing official's authorization. *State v. Richardson,* 2d Dist. Greene No. 2011 CA 2, 2012-Ohio-1232, ¶ 42. The officer's reliance on the issuing official's probable cause determination must be objectively reasonable. * * * Suppression remains proper where: 1.) the issuing official was "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; 2.) the issuing official "wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L .Ed.2d 920 (1979)"; (3) an officer purports to rely on a warrant based on an affidavit " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable' "; or (4) "depending on the circumstances of the particular case, a warrant may be so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume

it to be valid." *U.S. v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), quoting *Brown v. Illinois*, 422 U.S. 590, 611, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part).

Generally, in evaluating whether law enforcement's reliance on the issuing official's probable cause determination was objectively reasonable, courts should confine themselves to the four corners of the affidavit (and complaint under Crim.R. 4(A)(1)). *Richardson* at ¶ 43. However, there are instances where the court may look beyond the four corners of the affidavit/complaint to determine whether the good-faith exception applies. For example, courts can consider the fact that "the officer had enlisted the assistance and advice of the prosecuting attorney in preparing the affidavit," a different issuing official previously denied a warrant on the affidavit, or "the officer included false information in the affidavit." *Id*.

(Citations omitted.) *Mendell,* 2012-Ohio-3178, at ¶ 16-17.

**{¶ 67}** In *Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, the United States Supreme Court held that the purpose of the exclusionary rule is to deter police misconduct, and that the suppression of evidence obtained pursuant to a warrant should be ordered only in the unusual cases in which exclusion will further the purposes of the exclusionary rule. *Id*. at 917-918. Therefore, even if a court finds the warrant to be facially invalid, it must also review the text of the warrant and the circumstances of the search to ascertain whether the officers might have reasonably presumed it to be valid. As contemplated in *Mendell,* we may look beyond the four corners of the affidavit. *Mendell*, 2012-Ohio-3178 at ¶ 17.

{¶ 68} The record shows that the officers reasonably presumed in good faith that the search warrant was valid. The officers acted with objective good faith when they obtained a search warrant from a detached, neutral magistrate whom they believed was a court of appeals judge. The issuing magistrate was in fact a retired court of appeals judge, sitting by assignment. Hearing Transcript, page 10. Therefore, the officers' reliance on the magistrate's probable cause determination was objectively reasonable.

{¶ 69} The officers' good faith is also objectively reasonable because the content of the affidavit was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. A reasonably well-trained officer would not have known that the search was illegal despite the magistrate's authorization. As noted earlier, the language of the affidavit may be reasonably interpreted to mean that in the former search a marijuana grow operation was found at Leibold's same residence. When this information regarding the prior offense is combined with the other facts, the affidavit was not invalid on its face.

{¶ 70} On the good faith issue, the officers' actual knowledge of what the cryptic language means should also be considered. Both Officers Harlow and Combs knew from Officer Combs' personal experience that in 2005 Leibold's residence was the location of a marijuana grow operation, Leibold was charged with that offense, and was convicted of a related offense. Since the two officers who had knowledge of the former marijuana grow operation not only jointly drafted the affidavit but also executed the search warrant, any arguable ambiguities on the face of the affidavit must be read in light of their actual knowledge under a good faith analysis. A reasonably well trained officer having actual knowledge of these underlying facts would not have knowledge that the search was unlawful

when reading the language of the affidavit and warrant.

**{¶ 71}** The facts of this case satisfy each element of the test for the good faith exception to apply.

**{¶ 72}** The State did not raise the issue of the good faith exception to the exclusionary rule before the trial court. The court's failure to consider this issue must be by a plain error analysis. *State v. Casey*, 7th Dist. Mahoning No. 03-MA-159, 2004-Ohio-5789, ¶ 334 (Degenaro, J., concurring). This may be considered *sua sponte*. *State v. Smith*, 2d Dist. Montgomery Nos. 17475, 17476, 17477, 2000 WL 20882 *1 (Jan. 14, 2000). The record clearly supports a finding that the good faith exception should apply and it is determinative. Accordingly, under the first analysis, I would overrule the Defendant's First Assignment of Error and affirm the trial court order. Alternatively, under the second analysis, I would either find that the good faith exception applies or remand the matter to the trial court for consideration of the good faith exception to the exclusionary rule.

**{¶ 73}** For these reasons, I very respectfully dissent.

. . . . . . . . . .

Copies mailed to:

Michele D. Phipps
John J. Scaccia
Hon. Frances E. McGee

Case Name:        *State of Ohio v. Robert M. Leibold*
Case No.:         Montgomery App. No. 25124
Panel:       Fain, Froelich, Welbaum
Author:        Jeffrey E. Froelich
Summary: